**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 17-03505-BKT13 |
| | Chapter 13 |
| JORGE R. PADILLA ROSARIO | |
| Debtor(s) | |
| BANCO POPULAR DE PUERTO RICO | Adversary No. 18-00016 |
| Plaintiff | |
| vs. | |
| JORGE R. PADILLA ROSARIO | FILED AND ENTERED ON 12/5/2019 |
| Defendant | |

**OPINION AND ORDER**

Before this court is a *Motion for Summary Judgment* [Dkt. No. 44], filed by Banco Popular de Puerto Rico (hereinafter "BPPR" or "Plaintiff"), an *Opposition to Motion for Summary Judgment and Counter Motion for Summary Judgment* [Dkt. No. 47] filed by Jorge R. Padilla Rosario (hereinafter, "Debtor" or "Defendant"), and an *Opposition to Defendant's Counter Motion for Summary Judgment and Reply to Defendant's Opposition to BPPR's Motion for Summary Judgment* [Dkt. No. 56] filed by Plaintiff.

For the reasons stated herein, Plaintiff's Motion for Summary Judgment and Defendant's Counter Motion for Summary Judgment are hereby DENIED.

1

## I.        Factual Background

On October 29, 1998, Ms. Nereida Rosario Apolinaris (hereinafter "Rosario Apolinaris"), appeared before notary public Ramón E. Riancho Sanchez to execute the deed of purchase and sale number 3 of that year (hereinafter, "Deed of Purchase and Sale"). At that time she was unmarried and the mother of Defendant.

On the Deed of Purchase and Sale, Rosario Apolinaris appeared as the buyer to acquire from Mr. José Javier Severino and Ms. Zulma Enid Pietri Alberti the following property

> Urbana: Solar marcado en la Urbanización Villa Carolina, situado en el Barrio Hoyo Mulas de Carolina, marcado con el número tres (3) de la manzana cincuenta y cinco (55), con un área de trescientos dieciocho (318.00) metros cuadrados. En lindes por el Norte, con solar número dos (2) en veinticuatro metros (24.00); por el Sur, con el solar número cuatro (4), distancia de veinticuatro (24.00) metros; por el Este, con la calle número cincuenta y dos (52), distancia de trece punto veinte cinco (13.25) metros; por el Oeste, con solar número diez (10), en distancia de trece punto veinticinco (13.25) metros. Enclava edificación. (hereinafter, the "Property").

On the Deed of Purchase and Sale, Rosario Apolinaris represented that she was acquiring the Property for the amount of $105,000.00.

The Deed of Purchase and Sale reveals that notary public Ramón E. Riancho Sanchez certified that Rosario Apolinaris delivered to the sellers the sum of $40,995.28.

The Deed of Purchase and Sale does not contain any warnings regarding the provenance of moneys used by Rosario Apolinaris to purchase the Property. Notary public Ramón E. Riancho Sanchez only stated to have made the pertinent legal warnings and reservations to the grantors during the act of execution; he did not consign in the document any specific warnings in the Deed of Purchase and Sale regarding the moneys belonging to Defendant as a minor.

Defendant had not been emancipated in Puerto Rico and judicial approval was not obtained

2

in Puerto Rico for the use of Defendant's money by Rosario Apolinaris prior to the execution of the Deed of Purchase and Sale.

On January 19, 2004, Rosario Apolinaris and Defendant appeared before notary public Ruth Myrna Pizarro Rodriguez to execute the Deed of Ratification of Deed of Purchase Number 2 of that year (hereinafter the "Deed of Ratification").

In the Deed of Ratification, Defendant and Rosario Apolinaris admitted that when Rosario Apolinaris acquired the Property, the money she used to pay for the Property belonged solely to Defendant from his earnings as a professional baseball player while he was a minor.

The Deed of Ratification indicates that Defendant provided his consent and approval to Rosario Apolinaris' acquisition of the Property when he reached adulthood.

The Deed of Ratification was signed so that the Property could be transferred to the name of Defendant. The Property was recorded at the Puerto Rico Registry of property as owned by the Defendant and it is currently recorded that way.

On November 12, 2004, Defendant subscribed a mortgage note, for value received, to Doral Mortgage Corp. promising to pay the principal sum of $96,700.00, with interests on the unpaid principal balance from the date of the note at the rate of 6.25% ("Note 1").

Defendant subscribed "Note 1" before notary public Miguel A. Hernandez Sanabria, under affidavit number 10,641. To secure Doral Mortgage Corp., Defendant agreed to create a voluntary first priority mortgage over the Property. "Note 1" was subsequently transferred to BPPR.

On February 11, 2009, notary public Ruth Myrna Pizarro Rodriguez issued a notarial certificate numbered 1 (the "Notarial Certificate") to explain that in 1998 Rosario Apolinaris, appeared before notary public Ramón E. Riancho Sanchez to execute the Deed of Purchase and

3

Sale, because the Defendant was a minor and that the money she used to acquire the Property came from his employment as a professional baseball player.

On May 19, 2017, Defendant filed a voluntary bankruptcy petition under Chapter 13 of the Bankruptcy Code [17-03505].

BPPR was listed in Defendant's Chapter 13 petition under Schedule D as a secured creditor in the amount of $82,000.00 [17-03505, Dkt. No. 1]. On August 8, 2017, Defendant amended Schedule E/F to change BPPR from a secured creditor under Schedule D to an unsecured creditor [17-03505, Dkt. No. 17].

BPPR filed a claim against Defendant on June 8, 2017, amended on June 9, 2017, for monies owed to BPPR in the amount of $79,146.07 for a mortgage loan granted to debtor (hereinafter the "Claim").

Although the Claim stems from Note 1 and the Deed of Mortgage securing such note subscribed by Defendant, it does not enjoy secured status as the Deed of Mortgage was not recorded at the Puerto Rico Registry of the Property.

Defendant's Chapter 13 plan was confirmed on February 6, 2018 [17-03505, Dkt. No. 45].

On February 27, 2018, BPPR filed the instant adversary proceeding against Defendant.

BPPR requests that summary judgment be entered in its favor revoking Defendant's Chapter 13 plan confirmation under 11 U.S.C. § 1330 and seeks the non-dischargeability of its Claim under section 523(a)(2)(A) of the Bankruptcy Code.

On the other hand, Defendant requests for the denial of BPPR's Motion for Summary Judgment and that summary judgment be entered in his favor dismissing the instant adversary proceeding.

4

## II.    Standard of Review

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Pursuant to Fed. R. Civ. P. Rule 56(c), made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001). A fact is deemed "material" if it could potentially affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of

Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the non-movant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id.; See also, Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (holding that the materials attached to the motion for summary judgment must be admissible and usable at trial). "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

### III.    Legal Analysis

A party may seek revocation of a confirmation order pursuant to section 1330(a). 11 U.S.C. § 1330(a). Revocation is proper if the court finds that the "order was procured by fraud." Id. Although fraud is not defined under § 1330(a), courts have determined that revocation is proper if the following five elements are established:

1. the debtor made a materially false representation relating to the confirmation standards;
2. the representation was either knowing or made with reckless disregard for the truth;
3. the representation was made to induce the court to rely upon it;
4. the court did rely upon it; and
5. the court entered the confirmation order as a consequence of false representation.

In re Edwards, 67 B.R. 1008, 1009-10 (Bankr. D. Conn. 1986).

6

Because the term "fraud" is not defined in section 1330(a), courts have used section 523(a)(2)(A) as a guideline "for determining the prerequisites necessary for the demonstration of fraud under section 1330(a) since actual fraud is included as a ground for exception to discharge under that section." Edwards, 67 B.R. at 1009.

Under 11 U.S.C. §523(a)(2)(A), a discharge under section 1328(b) is not available for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…" 11 U.S.C.A. § 523(a)(2)(A). Thus, section 523(a)(2)(A) is clear that any of the three circumstances can activate this non-dischargeable provision, namely false pretenses, a false representation, *or* actual fraud. In order to establish a debt that is exempt from discharge because of false representation under section 523(a)(2)(A), the creditor must establish that: "(1) the debtor made a false representation of fact (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation." In re Hanson, 428 B.R. 475, 485-86 (Bankr. N.D. Ill. 2010).

Because direct evidence of the defendant's state of mind at the time of an alleged fraud rarely exists, any finding as to fraudulent intent of a defendant or intent to deceive must usually be established by circumstantial evidence. In re Mukhi, 254 B.R. 722, 729-30 (Bankr. N.D. Ill. 2000); In re Wien, 155 B.R. 479, 488 (Bankr.N.D.Ill.1993); In re Roberts, 82 B.R. 179, 184 (Bankr.D.Mass. 1987). "A finding that a debt is non-dischargeable under section 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law." Palmacci v. Umpierrez, 121 F.3d 781, 788 (1st Cir. 1997) (citing, In re Anastas, 94 F.3d at 1286 & n. 3); 124

7

Cong. Rec. H11089 (Sept. 28, 1978) (statement of Rep. Edwards), reprinted in 1978 U.S.C.C.A.N. 5787, 6436, 6453 ("Subparagraph (A) is intended to codify current case law... which interprets 'fraud' to mean actual or positive fraud rather than fraud implied in law")).

In a case involving section 523(a)(2)(A) or section 1330(a), as is the case here, it is the creditor who seeks relief on the basis of fraud who carries the burden of persuasion. The standard for fraud under section 1330 requires BPPR to prove, by clear and convincing evidence, that the Debtor made a materially false representation during the confirmation process that the Debtor either knew to be false, or was made either without the Debtor's belief in its truth or with reckless disregard for the truth; that the Debtor made the representation to induce the Court to rely upon it; that the Court did in fact rely on the materially false representation; and that as a result of the reliance, the Court confirmed the plan.

After reviewing the arguments of the parties, and the relevant law, this court concludes that there is an issue as to a material fact and therefore, neither party is entitled to judgment as a matter of law. Defendant's alleged fraudulent intent is a genuine issue of material fact in dispute. Because a genuine issue of fact is still unresolved, the court will not unnecessarily delve further into the merits of the case prior to the trial.

WHEREFORE, IT IS ORDERED that Plaintiff's Motion for Summary Judgment and Defendant's Counter Motion for Summary Judgment shall be, and are hereby, DENIED. Clerk to schedule a final pretrial hearing.

8

SO ORDERED.

In San Juan, Puerto Rico this 5th day of December 2019.

Brian K. Tester
U.S. Bankruptcy Judge